Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| PEDRO J. ORTIZ BLANCO Y OTROS<br><br>Apelante<br><br>v.<br><br>FIRSTBANK PUERTO RICO Y OTROS<br><br>Apelada | KLAN202300940 | Apelación procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Sobre: Incumplimiento de Contrato; Acción de Fiducia; Daños y Perjuicios<br><br>Caso Número: SJ2020CV04047 |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Pérez Ocasio y la Jueza Prats Palerm.[1]

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de mayo de 2024.

El apelante, Pedro Ortiz Blanco solicita que revoquemos la Sentencia Sumaria Parcial en la que Tribunal de Primera Instancia (TPI) desestimó la demanda contra FirstBank Puerto Rico.

El apelado, FisrtBank Puerto Rico, presentó su alegato en oposición al recurso.

Los hechos esenciales a la controversia que anteceden este recurso son los siguientes.

**I**

El 3 de diciembre de 2003, el apelante y su esposa adquirieron una embarcación financiada por el apelado. El apelante dejó de pagar el préstamo a partir del mes de octubre de 2013. El 1 de abril de 2014, el apelado presentó una demanda en su contra por incumplimiento de contrato y cobro de dinero. No obstante, esa primera demanda se desestimó sin perjuicio.

---

[1] Panel constituido mediante Orden Adm. OATA-2023-212.

El 21 de octubre de 2016, el apelado presentó una segunda demanda contra el apelante por incumplimiento de contrato y cobro de dinero. El caso se identificó con el número K AC2016-2065. El apelado pidió el pago de $230,716.25 del principal, $5,184.43 por los intereses acumulados, $3,563.73 por cargos por demora y el 10% de la suma reclamada para las costas y honorarios.

Las partes llegaron a un acuerdo y estipulación. El apelante reconoció la deuda cuya cantidad incrementaría diariamente hasta la firma del acuerdo y aceptó su responsabilidad por el pago total de la obligación. El apelado vendería la embarcación o en la alternativa el apelante conseguiría un comprador que sería evaluado por el banco. El apelante continuaría pagando $400.00 mensuales en abono a la deficiencia futura. El apelado certificaría la deficiencia existente, luego de vendida la embarcación y de acreditados los pagos mensuales que realizó el apelante. Firstbank se comprometió a no ejecutar la Sentencia por Estipulación, mientras se cumpliera con los términos señalados y no hubiese incumplimiento. Las partes acordaron que apelante entregaría las llaves de la embarcación al momento de la firma del acuerdo. El apelante reconoció que el banco podía iniciar el proceso de ejecución a su sola discreción, en caso de incumplimiento y luego de actualizar y certificar el balance adeudado. Además, relevó al apelado de toda y cualquier reclamación o causa de acción conocida o que pudo conocer presentada o que pudo presentar a esa fecha y/o que pudiera presentar en un futuro relacionada a los hechos o las obligaciones contenidas en la demanda. Véase, pág. 302 del apéndice de la oposición, incisos 13, 16, 17, 19 y 20 del acuerdo.

El TPI acogió el acuerdo y el 12 de junio de 2017 dictó sentencia de conformidad. Véase, pág. 308 del apéndice de la oposición.

El 27 de diciembre de 2018, el apelado pidió la ejecución de la sentencia, porque el apelante dejó de hacer los pagos mensuales acordados. El apelado informó que el apelante incumplió con el pago de $400.00 mensuales y pidió permiso para continuar la ejecución de la sentencia y para vender en pública subasta de los bienes del apelante. Además, informó que vendió la embarcación por $88,500.00 y que el apelante le adeudaba $176,077.55.

El apelante pidió la paralización de la ejecución, porque existía controversia sobre la cantidad recibida por la venta de la embarcación y la deuda. Según el apelante, el apelado incumplió con el acuerdo porque no le informó: (1) la merma de valor de la embarcación al momento de su entrega, (2) las diligencias que realizó para vender la embarcación, (3) los daños que los huracanes causaron a la propiedad, (4) si recibió alguna compensación de parte del seguro y (5) los resultados de la segunda tasación.

El TPI declaró NO HA LUGAR la *Solicitud de paralización de los procedimientos de ejecución de sentencia por inexistencia de sentencia ejecutable* y a la *Oposición a la solicitud de retiro de fondos*.

Inconforme, el apelante acudió a este tribunal en el recurso KLCE202100012 en el que alegó que:

> Erró el Tribunal de Primera Instancia al denegar la paralización de los procedimientos de ejecución de sentencia y emitir orden de embargo porque la Sentencia del 12 de junio de 2016 no es ejecutable.

> Erró el Tribunal de Primera Instancia al ordenar el embargo de bienes propiedad de un tercero no deudor, Pedro J. Ortiz y Assoc., LLC, sin notificación, sin vista y sin fianza y sin jurisdicción in personam.

Sentencia del TA, pág. 358 del apéndice.

El 9 de marzo de 2020, el Tribunal de Apelaciones (TA o tribunal apelativo) confirmó la denegatoria del TPI a paralizar la ejecución de la sentencia. Según el TA, el apelante fue quien incumplió con la sentencia por estipulación final y firme, porque dejó de hacer los pagos sin justa causa. Este tribunal no dio crédito

a las alegaciones sobre inexistencia de una cuantía líquida, vencida y exigible, porque en el récord constaban las múltiples ocasiones en las que el apelado actualizó la deuda objeto de ejecución. Igualmente, no dio crédito a los cuestionamientos sobre la reducción en valor en la segunda tasación. El foro apelativo no encontró evidencia alguna de que el apelado no tomó las medidas necesarias para cuidar el bote y ponerlo a la venta con posterioridad al paso de los huracanes.

El tribunal enfatizó que el apelante entregó el bote el 30 de mayo de 2017 y el segundo informe de valorización se realizó el 12 de junio de 2017. Según el TPI, el tasador advirtió que la embarcación mostraba signos de falta de mantenimiento, los interiores estaban muy deteriorados y que supuestamente el apelante sustrajo parte del equipo del bote. Según el Tribunal de Apelaciones, el acuerdo recogido en la sentencia, nada dispuso en cuanto al valor actualizado de la embarcación. Sin embargo, el 16 de enero de 2017, el apelado contrató un perito que fijó el valor de liquidación del bote en $165,000.00.

Por último, hizo hincapié en que, entre el valor adjudicado en el año 2017 y el precio de venta en el 2018, solo hay una diferencia de $6,500.00. La embarcación se valoró el 12 de junio de 2017 en $95,000.00 y se vendió el 28 de septiembre de 2018 por $88,500.00. Al foro apelativo le resultó evidente que el valor hubiese sido sustancialmente menor, si los huracanes le hubiesen causado un daño significativo a la embarcación. El Tribunal de Apelaciones resolvió que el banco actuó correctamente al solicitar el embargo de los bienes del apelante para recobrar el remanente del préstamo adeudado, debido a que evidenció el incumplimiento del apelante con los pagos estipulados. Véase, págs. 368-369 del apéndice de la oposición.

El 24 de agosto de 2020, el apelante presentó esta demanda contra el apelado por incumplimiento de contrato, acción fiducia y daños y perjuicios. El 6 de septiembre de 2022 presentó la demanda enmendada en que alegó que el banco incurrió en dolo, culpa y negligencia en el cumplimiento de la obligación.

El apelado alegó que la controversia era cosa juzgada, porque el Tribunal de Apelaciones la resolvió de forma final y firme en el caso de cobro de dinero que presentó el banco. Según el apelado, el tribunal apelativo validó en esa sentencia el proceso de ejecución y decretó el incumplimiento del apelante. Véase, pág. 433 del apéndice. Posteriormente, solicitó sentencia sumaria a su favor, porque el apelante pretendía volver a litigar el alegado incumplimiento del contrato de transacción judicial. FirstBank adujo que el apelante hizo las mismas alegaciones en ese caso y el tribunal no les dio credibilidad. Véase, pág. 459 del apéndice de la oposición.

El apelante se opuso a la moción de sentencia sumaria, porque el apelado incumplió sus deberes fiduciarios.

El TPI dictó la Sentencia Sumaria Parcial apelada, en la que determinó los hechos siguientes. El 20 de octubre de 2016, el apelado presentó una demanda por incumplimiento de contrato y cobro de dinero contra el apelante. El caso se identificó con el número K CD2016-2065. El 16 de enero de 2017, el tasador José M. Menoyo valoró la embarcación en $230,000.00 y determinó su valor de liquidación en $165,000.00. La tasación se realizó a petición del apelado. El 30 de mayo de 2017, ambas partes suscribieron un Acuerdo y Sentencia Estipulación. Las partes acordaron que: (1) el apelante entregaría voluntariamente la embarcación a la fecha de firmado el acuerdo, (2) el apelado vendería la embarcación o el apelante conseguiría un comprador que sería evaluado por el banco, (3) la oferta tenía que ser por escrito, (4) el apelado aceptaría la oferta

de mayor beneficio para el apelante, en caso de que existiera más de una oferta, (5) el apelante continuaría pagando $400.00 los días 15 de cada mes comenzando el mes de junio de 2017, (6) el apelado certificaría la deficiencia existente, luego de vender la embarcación y de acreditar los pagos mensuales que realizó el apelante, (7) el apelante se responsabilizó del pago de la deficiencia en su totalidad, mediante un plan de pago o refinanciamiento. Véase, Sentencia Apelada, pág. 773 del apéndice del recurso.

El foro apelado determinó estos otros hechos. El 12 de junio de 2017, el apelado pidió una segunda tasación de la embarcación. El señor Menoyo realizó la tasación y estimó el valor en el mercado de la embarcación en $205,000.00 y el valor de liquidación en $95,000.00. El apelante cumplió con el pago de los $400.00 mensuales de junio a agosto de 2017. El apelado vendió la embarcación el 28 de septiembre de 2018 por $88,500.00. El 4 de octubre de 2018 informó la venta por escrito al apelante y un desglose de la deuda actualizada. El 27 de diciembre de 2018, el apelado pidió la ejecución de la sentencia dictada en el K CD2016-2065 y actualizó la deuda. El apelado alegó que el apelante incumplió el acuerdo y que le adeudaba $176,077.55. Por esa razón, pidió la ejecución de la sentencia autorizando el embargo. El apelante solicitó la paralización de la ejecución y un descubrimiento de prueba, porque alegó que fue el apelado quien incumplió el acuerdo. El TPI denegó la paralización. El 9 de marzo de 2020, el Tribunal de Apelaciones confirmó al TPI, pero declaró nula cualquier orden de embargo y retiro de fondos de bienes pertenecientes a Pedro J. Ortiz, CPA y Asoc., LLC.

El TPI desestimó la demanda, porque las propias alegaciones del apelante daban la razón al apelado. El foro primario determinó que la controversia estaba basada en un asunto de estricto derecho que resumió a la aplicación de la doctrina de cosa juzgada en su

vertiente de impedimento colateral por sentencia. Al foro apelado le quedó claro el incumplimiento del apelante con el acuerdo, porque así lo determinó el TA en una sentencia que es final y firme. El TPI desestimó la demanda porque el Tribunal de Apelaciones resolvió en ese caso que procedía la ejecución de la sentencia y el embargo para recobrar el remanente de la deuda.

El apelante pidió reconsideración y le fue denegada.

Inconforme, presentó este recurso en el que alega que:

ERRÓ EL TPI AL DESESTIMAR SUMARIAMENTE LA DEMANDA ENMENDADA POR LA APLICACIÓN DE LA DEFENSA DE IMPEDIMENTO COLATERAL POR SENTENCIA, CUANDO NO FUE LEVANTADA CLARA, EXPRESA Y ESPECÍFICAMENTE POR EL FIRSTBANK EN SU CONTESTACIÓN A LA DEMANDA ENMENDADA.

ERRÓ EL TPI AL DESESTIMAR SUMRIAMENTE LA DEMANDA ENMENDADA POR LA APLICACIÓN DE LA DEFENSA DE IMPEDIMENTO COLATERAL POR SENTENCIA, CUANDO EL DEMANDANTE NUNCA TUVO ANTES LA OPORTUNIDAD DE SER OÍDO Y PRESENTAR EVIDENCIA DE MANERA SIGNIFICATIVA EN UN CASO PREVIO, SEGÚN REQUERIDO POR EL DEBIDO PROCESO DE LEY.

## I.

### Sentencia Sumaria

La sentencia sumaria promueve una solución justa, rápida y económica para litigios de naturaleza civil en los que no hay controversia genuina sobre hechos materiales que componen la causa de acción. *Birriel Colón v. Econo y otros*, 2023 TSPR 120, 213 DPR ___ (2023); *Acevedo y otros v. Depto. Hacienda y otros*, 2023 TSPR 80, 212 DPR ___ (2023); *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019). La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, establece que la sentencia sumaria procede cuando las alegaciones, deposiciones y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia, acreditan que no existe una controversia real y sustancial respecto a algún hecho esencial y material. *Íd.*, pág. 291.

El tribunal podrá dictar sentencia sumaria a favor del promovente, sin necesidad de celebrar un juicio, si no existe controversia de los hechos materiales que motivaron el pleito y únicamente resta aplicar el derecho a los no controvertidos. *González Meléndez v. Mun. San Juan et al.*, 2023 TSPR 95, 212 DPR ___ (2023); *Acevedo y otros v. Depto. Hacienda y otros*, supra; *Roldán Flores v. M. Cuevas et al.*, 199 DPR 664, 676 (2018). Ahora bien, la sentencia sumaria únicamente procede cuando el derecho aplicable lo justifica. *Oriental Bank v. Perapi et al*, 192 DPR 7, 25 (2014).

La parte promovente de la moción de sentencia sumaria tiene que desglosar los hechos sobre los que alega no existe controversia. Además de especificar para cada uno la página o párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya. 32 LPRA, Ap. V, R. 36.3; *Roldán Flores v. M. Cuevas et al.*, supra; *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). Mientras que, la parte que se opone a una moción de sentencia sumaria, no se puede quedar cruzado de brazos, tiene que demostrar que existe controversia en cuanto a algún hecho material. Se considera un hecho material aquel que pueda afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable o los elementos de la causa de acción. *Meléndez González v. M. Cuebas*, 193 DPR 100, 110 (2015); *Roldán Flores v. M. Cuevas et al.*, supra. Para ello, el promovido deberá presentar una contestación detallada y específica, y refutar los hechos que entiende que están en disputa con evidencia sustancial. *Birriel Colón v. Econo y otros*, supra; *Abrams Rivera v. E.L.A.*, 178 DPR 914, 933 (2010). Si, al contrario, asume una actitud pasiva y descansa únicamente en sus alegaciones, se expone a que se dicte sentencia sumaria en su contra sin la oportunidad de un juicio en su fondo, claro está, siempre que en Derecho proceda. *León Torres v. Rivera Lebrón*, 204 DPR 20, 43-44 (2020).

Cualquier duda no es suficiente para derrotar la procedencia de una moción de sentencia sumaria. La duda existente tiene que permitir concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes. Los tribunales solo podemos concluir que existe una controversia real y sustancial en cuanto a un hecho material, cuando el oponente presenta prueba que podría inducir a un juzgador racional a resolver a su favor. *Oriental Bank v. Perapi et al*, supra, pág. 26.

La sentencia sumaria tampoco procede, si existen alegaciones afirmativas en la demanda que no han sido refutadas y de los documentos que acompañan la moción de sentencia sumaria surge controversia sobre algún hecho material y esencial, o cuando como cuestión de derecho no procede el remedio sumario. *Oriental Bank v. Perapi et al*, supra, págs. 26, 27.

En cuanto al análisis que deberá llevar a cabo el foro apelativo resaltamos que ha de utilizar los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una sentencia sumaria. No obstante, al revisar la determinación del foro primario, únicamente podrá considerar los documentos que se presentaron ante ese foro. Es decir, las partes no podrán traer en apelación evidencia que no fue presentada oportunamente ante el Tribunal de Primera Instancia, ni esbozar teorías nuevas o esgrimir asuntos nuevos. El tribunal apelativo únicamente puede determinar si existe o no alguna controversia genuina de hechos materiales y esenciales y si el derecho se aplicó correctamente. Sin embargo, no puede adjudicar hechos materiales en disputa porque esa tarea le corresponde al foro de primera instancia. *Meléndez González v. M. Cuevas*, supra, págs. 114, 116.

Ahora bien, la Regla 36.4 de Procedimiento Civil, dispone lo siguiente:

> Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y es necesario celebrar juicio, será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, y hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando los procedimientos ulteriores que sean justos en el pleito, incluso una vista evidenciaria limitada a los asuntos en controversia. Al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad.
>
> A base de las determinaciones realizadas en virtud de esta regla, el tribunal dictará los correspondientes remedios, si alguno. 32 LPRA Ap. V.

La Regla 36.4 Procedimiento Civil y su jurisprudencia interpretativa aplican cuando el foro primario no decide el pleito en virtud de una sentencia sumaria. Esta regla delimita las instancias en las que el tribunal estará obligado a resolver la moción de sentencia sumaria, mediante una determinación que incluya los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertibles. La aplicación de la antedicha regla procede cuando: (1) no se dicta sentencia sumaria sobre la totalidad del pleito, (2) no se conceda todo el remedio solicitado y (3) se deniega la moción de sentencia sumaria presentada. Estas tres instancias conllevan la celebración de un juicio en su fondo. En dichas tres instancias, el tribunal deberá consignar los hechos sobre los cuales no existe controversia, puesto que será innecesario pasar prueba sobre estos durante el juicio. *Pérez Vargas v. Office Depot*, 203 DPR 687, 696-697 (2019).

Como norma general se ha reconocido que la sentencia sumaria procede en todo tipo de caso y en cualquier contexto sustantivo, independientemente de lo complejas que sean las controversias en un pleito. *Meléndez González v. M. Cuebas*, supra,

pág. 120. Ciertamente, existen litigios y controversias que, por su naturaleza, no resulta aconsejable resolverlos mediante una sentencia dictada sumariamente; ello, en vista de que en tales casos un tribunal difícilmente podrá reunir ante sí toda la verdad de los hechos a través de affidávits, deposiciones o declaraciones juradas. *Soto v. Hotel Caribe Hilton*, 137 DPR 294, 311 (1994); *García López v. Méndez García*, 88 DPR 363, 379 (1963). Algunos ejemplos son casos en que se plantea si hay o no negligencia o en los que resulta importante determinar el estado mental de ordinario no deben resolverse por la vía sumaria. *Ramos Pérez v. Univision,* 178 DPR 200, 212 (2010); *Cuadrado Lugo v. Santiago Rodríguez,* 126 DPR 272, 279 (1990).

### Cosa Juzgada

El propósito de la doctrina de cosa juzgada es poner fin a los litigios, luego de que han sido adjudicados de forma definitiva por los tribunales. Su objetivo es evitar que los ciudadanos sean sometidos nuevamente a las molestias de litigar dos veces una misma causa. Su aplicación no es automática ni inflexible, cuando significaría derrotar los fines de la justicia o consideraciones de orden público. La presunción de cosa juzgada únicamente se configura cuando concurren la más perfecta identidad de causas, cosas, partes y la calidad en que lo fueron. *Ortiz Matías et al v. Mora Development,* 187 DPR 649, 654 (2013).

El requisito de identidad de cosas ocurre cuando el segundo pleito es sobre el mismo asunto que se ventiló en el primer pleito. La cosa es el objeto o materia sobre la cual se ejercita la acción. La identidad del objeto existe, cuando el juez se expone a contradecir el derecho afirmado en una decisión anterior. El tribunal tiene que identificar cuál es el bien jurídico, cuya protección o concesión se solicita al juzgador. *Presidential v. Transcaribe,* 186 DPR 263, 274-275 (2012).

La identidad de causas se refiere al fundamento capital, el origen de las acciones o excepciones planteadas y resueltas. La causa es el motivo que tuvo el demandante para demandar. La identidad de causa existe cuando los hechos y los fundamentos de las peticiones son idénticos respecto a la cuestión planteada. Al determinar si existe identidad de causas de acción debemos preguntarnos, si ambas reclamaciones están basadas en la misma transacción o núcleo de hechos. *Presidential v. Transcaribe,* supra, pág. 275.

Por último, la identidad de las personas de los litigantes y la calidad en que lo fueron ocurre, cuando los litigantes del segundo pleito son causahabientes de los que contendieron en el pleito anterior, o están unidos a ellos por vínculos de solidaridad o por la indivisibilidad de las prestaciones. La cosa juzgada se extiende a quienes intervienen en el proceso, a nombre y en interés propio. Aquellos que son parte en ambos procedimientos, serán los mismos que resultarían directamente afectados por la excepción de la cosa juzgada. *Presidential v. Transcaribe,* supra, págs. 275-276.

### Impedimento Colateral por Sentencia

Una de las modalidades de la cosa juzgada es el impedimento colateral por sentencia. Esta modalidad se distingue de la doctrina de cosa juzgada, porque su aplicación no exige la identidad de causas. La razón de pedir en la demanda no tiene que ser la misma de la demanda anterior. El impedimento colateral no procede cuando la parte contra la que se impone no ha tenido oportunidad de litigar previamente el asunto y no fue la parte perdidosa en el litigio anterior. Su aplicación tampoco procede sobre asuntos que pudieron ser litigados y determinados en el primer caso y no lo fueron. Su aplicación se limita a las cuestiones que en efecto fueron litigadas y adjudicadas. *Presidential v. Transcaribe,* supra, págs. 276-277.

Esta modalidad impide que en un pleito posterior se relitiguen cuestiones de hecho o de derecho necesarias para la adjudicación de un pleito anterior. No obstante, independientemente de que haya sido por la misma causa de acción o por otra distinta, siempre tiene que ser entre las mismas partes o sus causahabientes. Su aplicación exige que concurran los requisitos siguientes: (1) que el asunto de hecho o derecho sea el mismo en ambos pleitos, (2) que se haya litigado en el pleito anterior, (3) que se haya determinado mediante una sentencia final y (4) que la determinación haya sido esencial para el fallo. *Universal Ins. y otro v. ELA y otros,* 211 DPR 455, 469-470 (2023).

### Las Defensas Afirmativas

La parte a quien corresponde responder una alegación tiene que afirmar hechos o argumentos que de ser ciertos derrotan el reclamo del demandante, aun dando como correctas todas sus alegaciones. Las defensas afirmativas principalmente comprenden materias sustantivas y/o constitutivas de excusas, por las cuales la demandada no debe responder a las reclamaciones en su contra. *Conde Cruz v. Resto Rodríguez,* 205 DPR 1043, 1063 (2020).

La Regla 6.3 de Procedimiento Civil, 32 LPRA Ap. V, contiene las defensas afirmativas que puede plantear la parte a quien corresponda presentar una alegación responsiva. El inciso h se refiere al impedimento y el p a cosa juzgada. Las defensas afirmativas tienen que plantearse en forma clara, expresa y específica en la respuesta, porque, de lo contrario, se tendrán renunciadas. No obstante, pueden ser incluidas mediante enmienda, cuando se conoce su existencia durante el descubrimiento de prueba. La denominación equivocada de una defensa como una reconvención, o de una reconvención como una defensa afirmativa, no impide que el tribunal pueda considerarla, de la forma correcta, cuando los fines de la justicia lo requieran.

El Tribunal Supremo de Puerto Rico reconoció en *Presidential v. Transcaribe,* supra, págs. 281 y 286, que los tribunales no pueden levantar *motu proprio* las defensas afirmativas a las que el demandado renunció. La única ocasión en que puede hacerlo vía excepción es cuando no existe jurisdicción sobre la materia. La decisión advirtió que el impedimento colateral por sentencia y el fraccionamiento de causa de acción son modalidades distinguibles de la cosa juzgada. Según el Tribunal Supremo, ambas son defensas independientes a la cosa juzgada y tienen que plantearse de forma clara, expresa y específica, en la primera alegación responsiva. Este caso se resolvió durante la vigencia de las Reglas de Procedimiento Civil de 1979, pero las Reglas de Procedimiento Civil del 2009 también incluyen la cosa juzgada y el impedimento colateral por sentencia como dos defensas afirmativas distintas. *Presidential v. Transcaribe,* supra, págs. 282-283.

### Las Alegaciones

La Regla 6.5 de Procedimiento Civil, 32 LPRA Ap. V, dispone que las aseveraciones de las alegaciones tienen que ser sencillas, concisas y directas. La regla no exige fórmulas técnicas para la redacción de las alegaciones o mociones. Todas las alegaciones se interpretarán con el propósito de hacer justicia.

### Denominación o súplica errónea

La existencia de defectos en la denominación del pleito o en la súplica del remedio, no impide al tribunal conceder los remedios que proceden. La Regla 71 de Procedimiento Civil, 32 LPRA Ap. V, permite al tribunal conceder el remedio que proceda, conforme a las alegaciones y la prueba. El Tribunal Supremo de Puerto Rico ha sido claro en que el nombre no hace la cosa. *Cortés Pagán v. González Colón,* 184 DPR 807, 813 (2012). El foro judicial deberá conceder el remedio al que se tenga derecho independientemente de la denominación o de la súplica contenida en la alegación. Cuando de

hacer justicia se trata, no hay moldes técnicos que limiten o aprisionen los remedios justos. Esta norma cobra importancia especial en áreas de gran interés público. *Negrón Rivera v. Bonilla,* 120 DPR 61, 72-73(1987). La expresión literal de lo solicitado no limita la obligación judicial de pasar juicio sobre la naturaleza de las circunstancias y la evaluación del remedio que mejor atienda la vindicación de los derechos que deben ser cautelados. El fundamento determinante de una causa de acción son los hechos y la prueba presentada y no el título o súplica de la demanda. *Magriz v. Empresas Nativas,* 143 DPR 63, 773 (1997). Este caso fue resuelto bajo la vigencia de la Regla 70 de Procedimiento Civil de 1979, pero el texto de la Regla 71 del 2009 es en esencia el mismo.

### III.

El apelante aduce que el apelado renunció a la defensa de impedimento colateral por sentencia, porque no la alegó en su contestación a la demanda enmendada y que el TPI no podía aplicarla *motu proprio*.

El apelado sostiene que alegó y aseveró con hechos aplicación de la defensa de impedimento colateral en su contestación.

El TPI no cometió el primer señalamiento de error. El apelado alegó hechos específicos que configuran la aplicación de la defensa afirmativa de impedimento colateral por sentencia.

El apelante alegó en la demanda enmendada que:

69. El Firstbank incumplió el Acuerdo desde el mes de julio de 2017.

El apelado contestó que, en el caso anterior de cobro de dinero, el TA resolvió que la sentencia por estipulación advino final y firme, que el apelante incumplió sus estipulaciones y que el banco solicitó correctamente el embargo. Véase, pág. 442 del apéndice.

El apelante alegó en la demanda enmendada que:

75. El Firstbank incumplió con su obligación fiduciaria de rendir cuentas, de cuidar la propiedad

entregada como un buen padre de familia, por lo que incumplió con sus obligaciones bajo el Acuerdo desde al menos agosto de 2017.

El apelado contestó que, en el caso anterior de cobro de dinero, el Tribunal de Apelaciones resolvió que no existía nada en el récord que apuntara a que el banco no tomó las medidas necesarias para cuidar del bote y ponerlo a la venta con posterioridad al paso de los huracanes. Véase, pág. 444 del apéndice.

El apelante alegó en la demanda enmendada que:

76. El 27 de diciembre de 2018, el Firstbank alegó que el Sr. Pedro Ortiz Blanco incumplió el Acuerdo al no realizar pagos mensuales después del mes de agosto de 2017, informó que vendió la embarcación, y que, a esa fecha, el Sr. Pedro Ortiz Blanco alegadamente le debía la suma de $165,419.07, más $10,689.48 en intereses, los cuales alegó continúan acumulándose hasta el pago total.

El apelado contestó que el TA determinó en el caso anterior de cobro de dinero que el apelante incumplió el acuerdo de los pagos mensuales y que el banco estaba en todo su derecho de solicitar la ejecución de la sentencia y el embargo de los bienes. Véase, pág. 444 del apéndice.

El apelante alegó en la demanda enmendada que:

81. El 27 de diciembre de 2018, el FirstBank alegó que vendió la embarcación el 28 de septiembre de 2018 sin previa rendición de cuentas ni notificación, al Sr. Pedro Ortiz Blanco, le declaró en incumplimiento y solicitó la ejecución de la alegada deficiencia.

La apelada contestó que el TA validó en el caso anterior de cobro de dinero y la venta de la embarcación, debido al incumplimiento del apelante. Véase, pág. 445 del apéndice.

El apelante alegó en la demanda enmendada que:

84. El Sr. Pedro Ortiz Blanco declaró al FirstBank en incumplimiento de sus obligaciones bajo el Acuerdo, solicitó paralización de los procedimientos de ejecución y solicitó vista evidenciaria para determinar, si en efecto, el FirstBanK incumplió el Acuerdo elevado a sentencia.

El apelado alegó que el TA resolvió en el caso de cobro de dinero que el apelante incumplió el acuerdo. Véase, pág. 445 del apéndice.

El apelante alegó en la demanda enmendada que:

86. El Tribunal de Primera Instancia declaró No Ha Lugar la solicitud de paralización de los procedimientos de ejecución y el señalamiento de vista evidenciaria del Sr. Pedro Ortiz Blanco sin la celebración de una vista evidenciaria, y post sentencia fundamentándose en meras alegaciones del FirstBank , permitió la continuación de los procedimientos de ejecución de sentencia.

El apelado contestó que el TA confirmó en el caso anterior de cobro de dinero la decisión del TPI de denegar la paralización y permitir la ejecución sin vista evidenciaria.

El apelante alegó en la demanda enmendada que:

118. El Firstbank incumplió con su obligación fiduciaria de rendir cuentas y de cuidar del patrimonio cedido para pago como un buen padre de familia.

El apelado contestó que el TA concluyó en el caso anterior de cobro de dinero que no existe nada en el récord que apunte a que el banco no tomó las medidas necesarias para cuidar del bote y ponerlo a la venta con posterioridad al paso de los huracanes Irma y María. Véase, pág. 451 del apéndice.

El apelante alegó en la demanda enmendada que:

119. El Firstbank incumplió con su obligación fiduciaria de no informarle de la tasación del 12 de junio de 2017, de las alegaciones del Sr. Menoyo de que el dueño se llevó ciertas cosas de la embarcación que el Sr. Menoyo alegó que los motores recientemente arreglados tenían problemas, de sus esfuerzos para vender la embarcación, del pago del seguro de la embarcación, de sus esfuerzos para proteger la embarcación del paso de los huracanes Irma y María, de los daños sufridos como consecuencia de los huracanes Irma y María, de la reclamación que hizo al seguro por los daños del pago del seguro por los daños sufridos por la embarcación durante los huracanes Irma y María, de las ofertas de compraventa recibidas para su evaluación y aprobación, y al vender la embarcación en contra de sus mejores intereses.

El apelado alegó que el TA resolvió en el caso de cobro de dinero que el apelante incumplió los acuerdos de la sentencia por

estipulación que es final y firme, y determinó que nada en el récord apunta a que el banco no tomó las medidas necesarias para cuidar el bote y venderlo, luego de los huracanes. Véase, pág. 452 del apéndice.

El apelante alegó en la demanda enmendada que:

120. El FirstBank incumplió con sus obligaciones bajo el Acuerdo de Cesión para pago al declarar en incumplimiento al Sr. Pedro Ortiz Blanco y actualizar la suma adeudada reclamando partidas que no fueron parte del acuerdo.

El apelado contestó que el TA resolvió en el caso anterior de cobro de dinero que el apelante incumplió sus obligaciones y que el apelado actualizó la deuda *motu proprio* o mediante orden del tribunal en múltiples ocasiones. Véase, pág. 452 del apéndice.

El apelante alegó en la demanda enmendada que:

122. El Firstbank tenía conocimiento que el Sr. Pedro Ortiz Blanco suscribió el Acuerdo de cesión para pago fundamentándose en el valor de la embarcación, según la tasación del Sr. Menoyo del 16 de enero de 2017.

El apelado contestó que el TA resolvió en el caso anterior de cobro de dinero que el acuerdo entre las partes no estaba sujeto a valorización o tasación alguna. Véase, pág. 453 del apéndice.

El apelante alegó en la demanda enmendada que:

131. El FirstBank incumplió con sus obligaciones fiduciarias bajo el Acuerdo de cesión para pago e incurrió en dolo en el cumplimiento, culpa y/o negligencia (i) al no notificar al Sr. Pedro Ortiz Blanco de la segunda tasación, (ii) al no rendir cuentas, (iii) al no cuidar de la embarcación como un buen padre de familia, (iv) al no pagar el seguro de la embarcación o de haberlo pagado no informarlo, (v) al no poder reclamar los daños sufridos por la embarcación como consecuencia de los huracanes Irma y María o de haberlos reclamados y haber recibido indemnización, no haber informado ni arreglado los daños sufridos por la embarcación, (vi) al vender la embarcación por casi menos de la mitad del valor de liquidación, según la tasación del 16 de enero de 2017 sin notificar al Sr. Pedro Ortiz Blanco de la oferta de compraventa para su evaluación y aprobación y/o (vii) al utilizar la segunda tasación no notificada para brindar una apariencia de legalidad a lo que realmente es el incumplimiento doloso de sus obligaciones fiduciarias bajo el Acuerdo de cesión para pago.

El apelado contestó que el Tribunal de Apelaciones determinó en el caso anterior de cobro de dinero que la parte que incumplió fue el apelante. Véase, pág. 455 del apéndice.

Los tribunales no estamos atados a la expresión literal de lo que solicitan las partes, porque nuestra obligación es <u>conocer</u> el remedio que mejor atienda la vindicación de los derechos que deben ser cautelados. El banco alegó que en el pleito anterior se ventilaron y adjudicaron asuntos de hecho y derecho, esenciales para esta demanda y que la decisión fue adversa para el apelante. Las contestaciones a la demanda enmendada nos dejan claro que el apelado levantó la defensa de impedimento colateral de forma clara, expresa y específica.

El apelante alega que el TPI aplicó incorrectamente la defensa de impedimento colateral por sentencia. El foro primario no cometió el segundo señalamiento de error.

El TPI aplicó correctamente la doctrina de impedimento colateral. La causa del primer pleito entre las partes fue el incumplimiento del apelante con el pago del préstamo que le concedió el apelado. El impedimento colateral por sentencia se configuró porque en ese primer caso, el TPI y el TA adjudicaron cuestiones de hecho y derecho, esenciales para este caso. Las alegaciones del apelante en su demanda son básicamente los errores que planteó ante el tribunal apelativo en el caso de cobro de dinero. El TA puso fin en ese pleito, a los cuestionamientos del apelante sobre el proceso de ejecución de sentencia. El apelante alegó en el primer caso que el banco incumplió el acuerdo transaccional porque no informó: (1) la merma de valor de la embarcación al momento de su entrega, (2) las diligencias que realizó para venderla, (3) los daños que los huracanes causaron a la embarcación, (4) si recibió una compensación del seguro y (5) los resultados de la segunda tasación.

La sentencia final y firme del TA, en ese primer caso, validó el proceso de ejecución, debido a que el apelante incumplió los acuerdos de la sentencia por estipulación. El tribunal apelativo: (1) no creyó las alegaciones sobre la reducción en el valor de la segunda tasación, (2) no encontró evidencia de que el apelado no tomó las medidas necesarias para cuidar el bote y ponerlo a la venta con posterioridad al paso de los huracanes, (3) determinó que el acuerdo no dispuso nada sobre el valor actualizado de la embarcación y (4) resolvió que el apelado evidenció el incumplimiento del apelante y solicitó correctamente el embargo de sus bienes para recobrar el remanente del préstamo adeudado.

El apelante presentó este pleito en un nuevo intento de paralizar la ejecución de la sentencia en el caso de incumplimiento de contrato y cobro de dinero. Sus alegaciones y argumentos no son nuevos, porque ya los presentó en ese caso. El apelante alegó en la demanda enmendada que el apelado incumplió con sus deberes fiduciarios de rendir cuentas y cuidar la propiedad como un buen padre de familia. Según el apelante, el banco incumplió porque no le informó sobre: (1) la tasación, (2) sus esfuerzos para vender la embarcación, (3) el pago del seguro de la embarcación, (4) sus esfuerzos por proteger la embarcación del paso de los huracanes y de los daños sufridos, (5) la reclamación que hizo al seguro por los daños y (6) las ofertas de compraventa recibidas. Igualmente, alegó que el banco reclamó partidas que no fueron incluidas en el acuerdo y no le notificó que iba a realizar una segunda tasación, luego del acuerdo.

Las alegaciones de violaciones al debido proceso de ley no tienen merito alguno. Todas las cuestiones que plantea el apelante en la demanda enmendada ya las litigó en el primer pleito y fueron adjudicadas por el TPI y TA de manera final y firme. El apelante

litigó en el primer pleito, los mismos asuntos que intenta relitigar y de los cuales resultó la parte perdidosa.

**IV.**

Por las razones, expuestas se confirma la sentencia apelada.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones